THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL HANSING,<br><br>                    Plaintiff,<br>v.<br><br>UTAH DEPARTMENT OF NATURAL RESOURCES, UTAH DIVISION OF WILDLIFE RESOURCES, JUSTIN M. SHANNON, GARY COOK, BLANCHE SMITH, GEORGE SOMMER, AND DOES 1-50,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE<br><br>Case No. 2:24-cv-480 DBP<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the Court is Defendants Utah Department of Natural Resources, Utah Division of Wildlife Resources, Justin Shannon, Gary Cook, Blanche Smith, and George Sommer (collectively State Defendants) 12(b)(6) Motion to Dismiss Plaintiff Michael Hansing's (Hansing) Second Amended Complaint (ECF No. 32) (Complaint) in its entirety.[1] The Court heard argument on Defendants' Motion May 21, 2025. Having considered the parties' arguments, memoranda, and relevant case law, the court enters the following granting Defendants' Motion to Dismiss.[2]

---

[1] Motion to Dismiss Second Amended Complaint, ECF No. 33.

[2] The parties consented to the undersigned conducting all proceedings in this matter, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (ECF No. 19); *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

## BACKGROUND[3]

Plaintiff Michael Hansing frequently attended Lee Kay (the Range), a shooting range operated by the Utah Division of Wildlife Resources, since its opening in 1981.[4] Around 2019, Mr. Hansing's relationship with Range staff began to deteriorate.[5] Mr. Hansing took issue with a "more rigid check-in procedure" required by the management, which required patrons "to sign their names before entering the range."[6]

On February 3, 2023, Hansing attempted to enter the Range.[7] Defendant Blanche Smith did not allow Hansing to enter with the signature he provided and insisted that he use his legal signature.[8] Hansing refused, and another Range staff member called the police.[9][10] When they arrived, Smith told the police "she had been directed to call law enforcement and request that they 'look at [Hansing's] driver's license maybe and determine if this signature is valid.'"[11] She stated that Lee Kay has "a waiver that we ask our shooters to sign" and that she "contacted the AG's Office" and they "informed [her]" that Hansing should provide "his legal signature."[12]

---

[3] The Court sets forth the facts based on Plaintiff's Second Amended Complaint and in the light most favorable to Plaintiff.

[4] Second Am. Compl. ¶¶ 6, 43.

[5] *Id.* ¶¶ 9–19.

[6] *Id.* ¶¶ 10, 11, 19.

[7] *Id.* ¶ 53.

[8] *Id.* ¶¶ 55–56.

[9] *Id.* ¶¶ 58–59.

[10] *Id.* ¶ 22–60.

[11] *Id.* ¶ 61.

[12] *Id.* ¶ 63.

Hansing refused to leave the Range and the police arrested him for criminal trespass and disorderly conduct.[13] Later, in a letter sent by Defendant Justin Shannon, Hansing was told he was no longer allowed to use the facilities at Lee Kay or at Cache Valley Shooting Range.[14]

The Range maintains a set of rules on its website (the Rules).[15] Per Item No. 1, "all Shooters and guests must check in at the office."[16] The Rules "contain[] no further information about the check in procedure."[17] The Rules go on to state, "Safe firearm handling practices are required at the Lee Kay Public Shooting Range. Enjoyable experiences at the range demand it and lives depend on it. Your compliance to these rules is appreciated by our staff, volunteers and guests."[18] The Rules then provide specifications on the firearms allowed, methods for using those firearms, and other housekeeping items.[19]

Hansing filed this lawsuit alleging that Range staff violated Hansing's Fourteenth Amendment rights based on substantive due process, procedural due process, and equal protection. Plaintiff also asserted claims for violation of the Range's rules, civil conspiracy, and aiding and abetting. Hansing amended his complaint twice refining his claims.[20] State Defendants moved to dismiss Hansing's Complaint, and Hansing opposed that motion.

---

[13] *Id.* ¶¶ 66–68.

[14] *Id.* ¶¶ 70–71.

[15] *Id.* ¶ 11.

[16] *Id.* ¶¶ 11, 47; Lee Kay Public Shooting Range Rules, (emphasis omitted) https://wildlife.utah.gov/lee-kay-rules.html [https://perma.cc/LEW3-LJ53].

[17] Second Am. Compl. ¶ 11.

[18] Lee Kay Public Shooting Range Rules, https://wildlife.utah.gov/lee-kay-rules.html [https://perma.cc/LEW3-LJ53].

[19] *Id.*

[20] Am. Compl. (ECF No. 28); Second Am. Compl. (ECF No. 32).

**STANDARD OF REVIEW**

In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citation modified). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citation modified).

**ANALYSIS**

**1.    Fourteenth Amendment Claims.**

To state a plausible § 1983 cause of action under the Fourteenth Amendment against any State Defendant for either damages or injunctive relief, Hansing must first show there is a violation of substantive due process, procedural due process, or equal protection. Each is addressed in turn.

**1.1 Substantive due process.**

A substantive due process violation exists "where government action has infringed a fundamental right without a compelling government purpose, as well as where government action deprives a person of life, liberty, or property in a manner so arbitrary it shocks the conscience." *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019) (citation modified). Hansing claims that State Defendants' "conduct and treatment of the Plaintiff at [the Range] on February

3, 2023" and the "ultimate termination of the Plaintiff's access" to the Range violates substantive due process.[21]

A right is fundamental when "the Supreme Court or the Tenth Circuit has already determined that it exists" or when the right is "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Abdi*, 942 F.3d at 1028 (citation modified). Plaintiffs asserting such rights must "carefully describe the right and its scope" to avoid vague generalities or broadly defined rights. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 769 (10th Cir. 2008). The description must "narrowly and accurately reflect[] the right that [a party] seeks to vindicate." *Id.* (citation modified). Examples of fundamental rights "consist primarily of those relating to marriage, family life, child rearing, and reproductive choices." *Id.* Identifying a new right "'is often an uphill battle, as the list of fundamental rights is short.'" *Id.* (quoting *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007)).

Neither the Supreme Court nor the Tenth Circuit has determined there is a fundamental right to access a state-owned shooting range. Hansing cannot show this right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." Other courts examining whether there is a fundamental right to enter state property have generally determined that there is no such fundamental right. *See Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 732 (7th Cir. 2006) (holding there is no fundamental right to enter public parks); *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) (holding a no-trespass ban from public housing does not violate a fundamental right even though it prevented the plaintiff from visiting his family at the public property); *Caldwell v. Univ. of N.M. Bd. of Regents*, 679 F. Supp. 3d 1087, 1182 (D.N.M. 2023) (holding a campus ban does not violate the plaintiff's fundamental rights). The

---

[21] Second Am. Compl. ¶ 75.

Court finds any right to access a state-owned shooting range is less "implicit in the concept of ordered liberty" than the right to access public parks, public housing, and public educational institutions. Participation at a state-owned shooting range is less common, less integral to a functioning society, and requires tighter restrictions to safeguard the participants and staff. It is a poor fit in the narrow list of other fundamental rights. Thus, Hansing fails to allege the violation of a fundamental right, and his substantive due process claim can only proceed if the allegations "shock the judicial conscience."

For actions to shock the judicial conscience, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (citation modified). "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222–23 (10th Cir. 2006) (citation modified). "This is a high level of outrageousness," *id.*, and is "met in only the most extreme circumstances." *Becker v. Kroll*, 494 F.3d 904, 922–23 (10th Cir. 2007). In determining whether conduct is truly conscience shocking, courts consider the principles of "(1) the need for restraint in defining [substantive due process] scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Camuglia*, 448 F.3d at 1223 (citation modified).

Hansing alleges that he was arbitrarily banned from a state-owned shooting range. This does not meet the needed criteria of outrageous and extreme conduct to shock the judicial conscience. Hansing must "do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power," *Moore*, 438

F.3d at 1040. To the contrary, Hansing alleges that the State Defendants sought legal advice regarding the situation before taking any action.[22]

Undermining the circumstances here, courts in the Tenth Circuit have determined that actions causing even a much greater degree of harm does not shock the conscience. For example, in *Seymour v. Garfield County*, 580 F. Supp. 3d 1039 (D. Utah 2022), the court determined that illegally confiscating and searching the plaintiff's computer, which included "the downloading of sensitive financial documents," was not sufficient because there was "not a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 1057 (citation modified). In *Becker*, the Tenth Circuit held that defendants who maliciously and groundlessly investigated and prosecuted the plaintiff, and then withheld exculpatory evidence, still did not "reveal[] a substantial deprivation sufficient to rise to the level of a substantive due process violation." 494 F.3d at 923–25; *see also Martinez v. Uphoff*, 265 F.3d 1130, 1133 (10th Cir. 2001) (holding the state activity did not shock the conscience where a prison guard was not protected from dangerous inmates during an escape); *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 929 (10th Cir. 2012) (holding the state activity did not shock the conscience where a patient who was being withheld seizure medication was left alone). The harm that flows from illegal searches of sensitive information, malicious prosecution, and withholding exculpatory evidence is far greater than the alleged harm in this case. Without extreme and outrageous harm that exceeds the circumstances of the cases above, or allegations of extreme and outrageous misconduct, Hansing fails to state a claim for the violation of substantive due process.

---

[22] Second Am. Compl. ¶ 63.

**1.2 Procedural due process.**

Procedural due process of the Fourteenth Amendment protects against the deprivation of life, liberty, or property without due process of law. "Procedural due process guarantees apply only to those liberty and property interests encompassed by the fourteenth amendment." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir. 1991). For procedural due process claims, courts "engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994). The parties primarily focus on the first element of this inquiry.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Such an interest does not arise from the Due Process Clause itself, but is defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172–73 (10th Cir. 2016).

Hansing's Complaint does not allege where his property interest in using the Range comes from. In the briefing, and at oral argument, the parties discussed the potential of the property interest arising from the Range's rules.

An organization's rules and regulations can create a property interest when "there are specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Brown v. Eppler*, 725 F.3d 1221, 1226–27 (10th Cir. 2013)

(citation modified). "However, where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue," then no property interest exists. *Martin Marietta Materials, Inc.*, 810 F.3d at 1178. The key is the level of discretion given to the decision-maker in applying the asserted rules. "When analyzing whether a plaintiff presents a legitimate claim of entitlement, [courts] focus on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." *Brown v. Eppler*, 725 F.3d at 1221.

For instance, in *Brown v. City of Michigan City, Indiana*, the court held the plaintiff did not have a property interest in accessing city parks because the city's discretion to ban him was not "*clearly* limited." 462 F.3d at 729 (emphasis added). Even though the City had a "practice of opening its parks to its residents free of charge," the City still "ultimately possesses discretion to decide whether and under what conditions members of the public can access the City's parks." *Id.* In contrast, in *Brown v. Eppler*, the court determined that a public bus entity's rules and procedures "limited its own discretion to ban riders to a set of *clearly defined* circumstances," and therefore, a property right existed. 725 F.3d at 1227 (emphasis added). The rules banned "any fighting, throwing of any objects, pushing, rough or loud behavior or vulgar language," stated that "[b]y violating any of these policies [a rider] may be banned," and the plaintiff was indeed banned for not following these rules. *Id.*[23]

---

[23] While rules and regulations may create a protected property interest, it is unclear to what extent this applies to all public places. For example, courts within the Tenth Circuit have held that there is not a protected property interest for non-students entering a college campus, parents entering their child's schools, and access to public courthouses. *See Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1058–59 (D. Kan. 2021) ("[U]nder Tenth Circuit law, [a nonstudent] plaintiff does not have a protected interest in entering [a college] property."); *Abegg v. Adams/Arapahoe Sch. Dist. J8/Aurora Pub. Sch.*, No. 12-CV-01084-REB-MJW, 2012 WL 7783087, at *5 (D. Colo. Oct. 9, 2012) (unpublished), report and recommendation adopted, 2013 WL 1164473 (D. Colo. Mar. 21, 2013) ("[C]ourts have held, and I find likewise, that parents do not have a constitutional right to access school premises."); *Springer v. Seventh Jud. Dist. Ct.*, No. 1:23-CV-0499-MIS-JMR, 2024 WL 531271, at *15 (D.N.M. Feb. 9, 2024) (unpublished) ("The Court finds that Plaintiff does not have a protected liberty or property interest in unrestricted access to the Seventh Judicial District Court Clerk's Office."). In those situations, while a public entity may still

The only rule mentioned in the Complaint is that "All shooters and guests must check in at the office."[24] The Complaint cites to the set of rules, which mostly discuss the proper handling of firearms at the Range.[25] Nowhere in this rule, or set of rules, does it confine the Range's discretion or mandate any particular access or outcome based on a pre-condition. The Rules do not provide an exhaustive list of prohibited behaviors, which imply that using the range is guaranteed, so long as the rules are followed. They do not mention fighting, disruptive conduct, or other unsafe behavior. Rather, they mostly focus on proper firearm use and handling. State Defendants assert, "When managing a place where weapons are regularly fired, it would be absurd to limit the Range staff's discretion in regulating the area to an enumerated list of conduct, and the rules do not purport to do that. Discretion is inherently necessary in maintaining the safety of a shooting range."[26] If the Range has discretion in allowing continued access under the Rules, the Rules do not create a constitutionally protected property interest, and courts need not inquire into the reasonableness of a decision maker's determination. *Cf. Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004) (stating federal courts are not "general-purpose second-guessers of the reasonableness of broad areas of state and local decision making" and that role "is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system").

---

have rules for visitors, those rules do not independently convey an expectation of an entitlement to access property simply because rules are followed. Where access is more restricted and discretionary, such as in the case of a shooting range, it is inherently less likely that an organization's rules and policies create a property interest in continued access.

[24] Second Am. Compl. ¶ 11 n.1.

[25] *Id.*

[26] Mot. to dismiss 19 (ECF No. 33).

Because the Range maintains discretion, Hansing does not have a legitimate claim of entitlement to access the Range through the Range's rules or regulations and there is no constitutionally protected property interest that would invoke procedural due process.

### 1.3 Equal protection.

Hansing's last federal constitutional claim is that the Range violated the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that the State shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Hansing claims that his equal protection claim is based on his classification as a disabled veteran.

To sufficiently plead an equal protection claim, Hansing must provide factual averments that make his claim plausible. There must be a factual basis suggesting that State Defendants had the intent to discriminate against Hansing because of that classification. *See Ingram v. Cooper, 163 F. Supp. 3d 1133, 1139 (N.D. Okla. 2016)* (stating that "to establish a violation of the Equal Protection Clause, a plaintiff must allege that a defendant acted with the intent to discriminate against the plaintiff because of the plaintiff's protected status" and the "specific facts alleged by the plaintiff must be at least susceptible of an inference of discriminatory intent" (citation modified)).

Hansing's Complaint states, "As a disabled Veteran, Hansing is entitled to Equal Protection."[27] It also provides, "State Defendants unfairly targeted and singled out Hansing, who is a disabled Veteran."[28] But nowhere does Plaintiff allege that he was discriminated against *because* he is disabled or a veteran. Nor does Plaintiff allege the State Defendants knew Hansing

---

[27] Second Am. Compl. ¶ 86.

[28] *Id.* ¶ 78.

was disabled or a veteran. The Complaint provides no detail on the nature of Hansing's disability at all. In sum, there are no factual averments plausibly suggesting that State Defendants' actions amounted to intentional discrimination against Hansing because he is a disabled veteran, so Hansing does not state a claim under this theory.

In the parties' briefing, State Defendants also discussed a possible class-of-one claim under the Equal Protection Clause. Hansing did not appear to pursue this claim in his briefing or at oral argument. To the extent that Hansing pursues this claim, the Complaint does not allege a plausible claim.

A class-of-one equal protection claim "'is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). To succeed on such a claim, "a plaintiff must first establish that others, similarly situated in every material respect were treated differently. A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Id.* (citation modified). This determination is under an objective standard. "[I]f there is a reasonable justification for the challenged action, [courts] do not inquire into the government actor's actual motivations." *Id.*

Courts must exercise caution in allowing these claims for "challenges to low-level government decision-making," and particularly those which "involve[] a great deal of discretion." *Id.* at 1216; *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004). "[W]here the government actor enjoys a broader range of discretion, and may

properly base a decision on a myriad of potentially relevant variables, it is more likely that there are material distinctions between allegedly similarly situated parties, leading to a ready supply of rational and not wholly arbitrary reasons for differential treatment." *Kansas Penn Gaming, LLC,* 656 F.3d at 1216.

Hansing's allegations regarding a class-of-one claim are at best solely conclusory. Hansing claims the Range's rules were randomly enforced. But "the fact that government action is infrequent, or that a formerly unenforced regulation is enforced, is not enough to create a federal cause of action" under a class-of-one theory. *Id.* at 1220. Hansing also avers the rules were selectively used against him. But he fails to provide specific factual averments of similarly situated persons where the rules were not followed. Hansing does not identify another person who similarly used a "non-legal" signature or a signature where the legality could be questioned. And he does not provide another person who refused to provide a signature, refused to allow Range staff to verify the signature, and demonstrated the same or similar behavior, who was removed from the Range. Instead, Hansing broadly asserts that "all other shooters are permitted to sign in using the signature of their choice."[29] This general statement alone does not plausibly allege that there are other persons similarly situated to Hansing in all material respects. For the reasons set forth in *Kansas Penn Gaming*, this is not sufficient to allege a plausible class-of-one constitutional violation.

Even if Hansing did provide similarly situated persons for a class-of-one claim, the facts alleged do not state a plausible constitutional violation under rational basis review.[30] "Any

---

[29] Second Am. Compl. ¶ 98.

[30] Rational basis review would also apply to Hansing's claims for discrimination based on disability and veteran status, since neither are suspect classifications under the Equal Protection Clause. *See Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1354 (10th Cir. 1987) ("[T]he Supreme Court ruled that the mental impairment was neither a suspect nor a quasi-suspect classification . . . ."); *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974)

reasonably conceivable state of facts" can provide the basis for a decision under rational basis review. *See Copelin-Brown v. New Mexico State Pers. Off.*, 399 F.3d 1248, 1255 (10th Cir. 2005) (citation modified). Here, given the inherent risks at a shooting range, it is rational to have a "more rigid" check in procedure to make sure that patrons understand the risks of using the Range, acknowledge the rules, and agree to liability waivers. Further, it is rational to attempt to verify whether someone is providing a legitimate signature to ensure they agree to the rules and waivers. And it is reasonably conceivable that the State Defendants' actions were motivated at least in part by safety and operational concerns. These actions all involve a substantial amount of discretion, "leading to a ready supply of rational and not wholly arbitrary reasons for differential treatment." *Kansas Penn Gaming, LLC*, 656 F.3d at 1216. Thus, Hansing has not plausibly stated a class-of-one equal protection claim.

Qualified immunity.

The individual State Defendants raised the affirmative defense of qualified immunity. Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation modified). The defense protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation modified).

A defendant is entitled to qualified immunity unless the plaintiff can (1) "make out a violation of a constitutional right," and (2) show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

---

(determining that veteran status does not implicate a suspect classification subject to heightened scrutiny under the Equal Protection Clause).

Plaintiffs bear a "heavy burden" of satisfying both parts of this test to overcome qualified immunity. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

Even presuming Hansing alleged a viable constitutional violation by an individual State Defendant, the second element of the qualified immunity analysis requires courts to examine whether the right was "clearly established." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). A "clearly established" right is one that makes it apparent that the defendant's conduct is unlawful "in light of preexisting law." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998). This burden is satisfied by a plaintiff "showing that there is a Supreme Court or Tenth Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts." *Id.* Qualified immunity should be granted "if a reasonable officer might not have known for certain that the conduct was unlawful." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017). The "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (citation modified). And the right "must be defined with specificity," *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019), and "particularized to the facts of the case." *White*, 580 U.S. at 79.

Hansing has not presented any authority demonstrating that State Defendants violated a clearly established right. The Court is unaware of any authority, let alone Tenth Circuit cases, that hold access to a state-owned shooting range is a fundamental right implicating substantive due process. And the cases examining the shock-the-conscience standard have required much more egregious activity and serious harm than that here to recognize a cognizable claim. *See, e.g.*, *Becker v. Kroll*, 494 F.3d 904, 923–25 (10th Cir. 2007). Thus, a reasonable officer would not know for certain that the alleged conduct was unlawful. *See id.* at 923 n.12 ("Even if we

agreed that [the plaintiff] has stated a substantive due process claim, given the novel nature of [the plaintiff]'s theory when compared with earlier cases, qualified immunity would likely apply to the officials involved.").

Likewise, the Court is unaware of any Tenth Circuit or Supreme Court authority holding there is a constitutionally protected property or liberty interest in accessing a state-owned shooting range. And other courts have held that state officials who banned plaintiffs from even more public settings than a shooting range are entitled to qualified immunity because the right to access those places was not clearly established. *Vincent v. City of Sulphur*, 805 F.3d 543, 548 (5th Cir. 2015) (addressing city buildings); *Caldwell v. Univ. of N.M. Bd. of Regents*, 510 F. Supp. 3d 982, 1056 (D.N.M. 2020) (addressing a university campus). Lastly, Plaintiff's allegations do not amount to a clearly established class-of-one equal protection violation where there are no other persons similarly situated in every material respect and the decision whether to allow a person into a state-owned shooting range is made with a range of discretion and pursuant to a legitimate state activity. For these reasons, a reasonable officer would not have known "for certain" that the conduct alleged in the Complaint was unlawful, and the individual State Defendants are entitled to qualified immunity.[31]

**2.    Hansing's state constitutional claims.**

**2.1 Violation of the Utah Constitution.**

Hansing alleges that State Defendants violated the Utah Constitution Article I, sections 7 and 24. Article I, section 7 states, "No person shall be deprived of life, liberty, or property,

---

[31] In deciding whether to dismiss this lawsuit with or without prejudice, the Court determines that dismissal should be granted with prejudice. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Plaintiff has already twice amended his complaint and has not alleged a plausible claim for relief. Based on the arguments presented by both sides at the hearing, the Court believes that an additional amendment of Hansing's Complaint would be futile.

without due process of law." This is the Utah state constitutional equivalent of the Federal Due Process Clause. The text is the same as the federal constitution. And the section similarly protects a right that is "so fundamental or important that it is protected from extinguishment." *In re Adoption of J.S.*, 2014 UT 51, ¶ 22, 358 P.3d 1009. The Utah Supreme Court has stated "Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the . . . United States Constitution. Therefore, our analysis of questions concerning procedural due process under [both state and federal] constitutions are also substantially the same." *State v. Angilau*, 2011 UT 3, ¶ 13, 245 P.3d 745.

Article I, section 24 is called the Uniform Operations Clause, and "is essentially the State of Utah's analogue to the Equal Protection Clause in the United States Constitution." *Boldt v American Fork City*, No. 2:20-CV-817-TC-DAO, 2021 WL 5731587, at *11 (D. Utah Dec. 2, 2021) (unpublished); *see also Horton v. Utah State Ret. Bd.*, 842 P.2d 928, 933 n.3 (Utah Ct. App. 1992) (calling Article I, section 24 "the equivalent of the equal protection clause of the Fourteenth Amendment") (citation modified). Courts generally apply the same analysis for equal protectional claims raised under Article I, section 24 as those raised under the Fourteenth Amendment. *See Boldt*, 2021 WL 5731587, at *11 (unpublished).

For the reasons set forth above demonstrating that Hansing has not alleged any violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, Hansing has also not alleged any violation of the Utah Constitution's counterparts. Hansing has not provided any caselaw suggesting that the right to access a state-owned shooting range is fundamental under Utah's constitution, or that it is a constitutionally protected property interest. And Hansing's class-of-one equal protection claim lacks the required elements to establish a plausible violation. Thus, Hansing has not alleged any Utah constitutional violation.

### 2.2. Spackman analysis.

Even if Hansing did sufficiently allege a Utah constitutional violation, any claims for money damages would be subject to dismissal because Hansing has not established the *Spackman* elements. For Utah constitutional claims for money damages, "[t]o survive a rule 12(b)(6) motion, the plaintiff . . . must allege that the violation was 'flagrant,' that alternative remedies would not redress the plaintiff's damages, and that equitable relief was 'wholly inadequate.'" *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 40, 342 P.3d 224 (quoting *Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶ 23, ¶ 25, 16 P.3d 533). When these elements are not set forth in the complaint, dismissal for failure to state a claim is proper. *Id.*

Hansing has not set out facts showing an individual State Defendant acted to flagrantly violate rights. "[A] flagrant violation in essence means that a defendant must have violated clearly established constitutional rights of which a reasonable person would have known." *Kuchcinski v. Box Elder Cnty.*, 2019 UT 21, ¶ 22, 450 P.3d 1056. "[A] clearly established right is one in which the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation modified). This requirement "ensures that a government employee is allowed the ordinary human frailties of forgetfulness, distractibility, or misjudgment without rendering him or herself liable for a constitutional violation." *Id.* (citation modified). The notion of a clearly established right as articulated by the Utah Supreme Court above is borrowed from federal caselaw regarding qualified immunity. *See id.* ¶¶ 22–23.

Hansing cannot show a flagrant violation of his state constitutional rights for the same reason that individual State Defendants are entitled to qualified immunity from § 1983 claims,

the law is not clearly established. The Court is not aware of existing authority interpreting the Utah Constitution that adequately puts the individual State Defendants on notice that any of their alleged actions were unlawful. That is, there is no caselaw demonstrating that the Utah Constitution could be violated by denying Hansing access to a state-owned shooting range. Because Hansing does not establish the first element of Spackman, the Court need not address the other two *Spackman* elements.[32]

## ORDER

Accordingly, for the reasoning set forth above, the Court ORDERS:

the State Defendants' motion to dismiss is GRANTED (ECF No. 33). Plaintiff's Complaint is dismissed with prejudice.

DATED this 13 June 2025.

_____
Dustin B. Pead
United States Magistrate Judge

---

[32] Hansing's remaining claims of the violation of Lee Kay's rules, civil conspiracy, and aiding and abetting are also subject to dismissal. None of these claims are viable independent causes of action that can survive on their own.